IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LINDA OLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:22CV527 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Linda Olson brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for supplemental security income ("SSI"), disability insurance benefits ("DIB"), and a period of disability ("POD"). The Court has before it the certified administrative record and cross-motions for judgment. After the parties briefed their cross-motions, the Fourth Circuit Court of Appeals issued a decision, *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023), which the Court concluded might help resolve similar issues presented in this case. Consequently, the Court had the parties brief what impact, if any, *Shelley C.* had upon Plaintiff's challenge to the ALJ's decision. As explained in greater detail below, the Court concludes that a remand for further administrative proceedings is in order so that the Commissioner may have the benefit of the Fourth Circuit's decision in *Shelley C.* in assessing Plaintiff's depression.

## I. PROCEDURAL HISTORY

In 2016, Plaintiff filed applications for a POD, DIB, and SSI alleging a disability onset date of May 1, 2013, later amended to June 2, 2016. (Tr. 271-81, 59, 1287, 1219, 1248.)[1] The applications were denied initially and again upon reconsideration. (Tr. 188-92, 197-215.) After a hearing, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 31-47, 50-73.) The Appeals Council denied Plaintiff's request for review and this Court later remanded the matter pursuant to the Commissioner's uncontested motion for a remand. (Tr. 1-6, 1310-11.) A new hearing was held, and a new decision was issued by the same ALJ. (Tr. 1216-1231, 1245-83.) The Appeals Counsel then denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1205-1212.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 7.)

not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

**III. THE ALJ'S DECISION**

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920.[2] *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 2, 2016, the alleged amended onset date. (Tr. 1219.) The ALJ next found the following severe impairments at step two: anxiety, depression, and personality disorder. (Tr. 1219.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 1221.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform the full range of work at all exertional levels, with the following additional limitations:

> She can understand, remember and carry out unskilled work of a routine, repetitive nature. She can maintain attention and concentration for at least two-hour periods of time sufficient to

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

3

>carry out unskilled work, in the course of a normal workday for a normal workweek. She can adapt to routine, infrequent workplace changes at a non-production pace, meaning non-assembly line/conveyor belt type jobs, with occasional interaction with the general public, frequent but no constant interaction with co-workers and supervisors, meaning work not requiring teamwork for task completion.

(Tr. 1223.)

At the fourth step, the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 1228.) At step five, the ALJ concluded that there were other jobs in the national economy that Plaintiff could perform. (Tr. 1229.)

**IV. ISSUES AND ANALYSIS**

Plaintiff challenges the ALJ's assessment of the medical opinions of her treating physician, Dr. Robert McHale. (Docket Entry 12 at 10.) In making this argument, Plaintiff also challenges the ALJ's subjective complaints analysis as it relates to her depression related symptoms. (Docket Entry 18 at 3-4; Docket Entry 20 at 1 n.2, 3-4.) As explained below, after reviewing the record and the ALJ's analysis, the Court concludes that the after-decided decision by the Fourth Circuit in *Shelley C.* raises sufficient doubt about the ALJ's analysis of the evidence related to Plaintiff's depression to warrant remand for a re-evaluation of the medical evidence.

**a. The Governing Law**

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015); *Hines v.*

*Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). An ALJ need not discuss every piece of evidence in making an RFC determination, *see Reid v. Commissioner*, 769 F.3d 861, 865 (4th Cir. 2014), but "must build an accurate and logical bridge from the evidence to [the] conclusion," *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks and citations omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Moreover, as the Fourth Circuit Court of Appeals has explained, remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review[.]" *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (citation omitted). For this Court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citation omitted). The ALJ "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphases and alteration in original) (internal quotation marks omitted). Otherwise, the court is "left to guess about how the ALJ arrived at his conclusions" and cannot meaningfully review them. *Mascio*, 780 F.3d at 637.

5
Case 1:22-cv-00527-LCB-JLW Document 21 Filed 07/21/23 Page 5 of 14

### i. The Treating Source Rule

Beyond this, the treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Yet not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). When a treating source's medical opinion is not given controlling weight, the ALJ should consider the following factors in deciding what weight to give a medical opinion: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)(i-vi), 416.927(c)(2)(i-vi). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. The ultimate issue of whether a claimant is disabled is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).[3]

---

[3] These regulations apply for applications, like Plaintiff's, filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. For applications filed on or after March 27, 2017, a new regulatory framework for considering and articulating the value of medical opinions has been

### ii. Subjective Complaints

"An ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment." *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018). A two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-596. While the ALJ must consider a claimant's statements and other subjective evidence at step two, she need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3),[4] and heard the claimant's testimony and

---

established. *See id.* §§ 404.1520c, 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017).

[4] Relevant factors include:

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

observed her demeanor, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

### iii. Shelley C.

The case of *Shelley C.* is also particularly relevant here. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023). In *Shelley C.*, the Fourth Circuit held for the first time that depression is a disease that does not produce objective medical evidence, and therefore subjective statements regarding its symptoms cannot be discounted based on objective medical evidence (or lack thereof). *Shelley C.*, 61 F.4th at 361-62. In light of this, the Fourth Circuit concluded that "[b]ecause the ALJ improperly increased Shelley C.'s burden of proof, in requiring that her subjective statements be validated by objective medical support, we must find error." *Id.* at 362 (internal citations, quotations, and brackets omitted); *see also Arakas v.*

---

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

*Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) ("ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence.*") (emphasis added). The Fourth Circuit Court Appeals issued this case after the ALJ's final decision in this matter, and the ALJ did not have the benefit of the *Shelley C.* opinion prior to issuing her decision.

### b. A remand in light of *Shelley C.* is warranted.

The ALJ here committed the same error as in *Shelley C.*. Specifically, Plaintiff suffers from depression, which the ALJ recognized as severe at step two of the sequential evaluation process. (Tr. 1219.) In fact, Plaintiff has been psychiatrically hospitalized repeatedly for her depression, including both before and during the relevant period.[5] (Tr. 508-514 (July 2016), 3209-11 (May 2020).) This means that the ALJ was prohibited from discounting Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms of depression on the basis of objective medical evidence or its lack. *See Shelley C.*, 61 F.4th at 361-62; *see also Arakas*, 983 F.3d at 97. Yet, it appears that the ALJ applied a contrary standard.

---

[5] The ALJ's decision states that "*prior to the relevant period*, she was admitted to the hospital as an inpatient for treatment of depression and suicidal ideation secondary to psychosocial stressors including, homelessness, joblessness, separation from her six-year-old son, financial restraints, and medication noncompliance." (Tr. 1224 (emphasis added).) The ALJ proceeds to explain that Plaintiff "was admitted as an inpatient on July 24, 2016 for psychiatric hospitalization to get started on Abilify and get stabilized (Exhibit B7F/22)." (Tr. 1224, 515.) However, the ALJ also finds Plaintiff's amended alleged onset date to be June 2, 2016, which would mean that Plaintiff's July 2016 psychiatric hospitalization occurred *within the alleged period of disability* and not prior thereto. (Tr. 1219.) On remand, the ALJ should clarify or correct this apparent discrepancy.

9

More specifically, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that she had carefully considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 1224.) The ALJ therefore discharged her duty under the first step of the *Craig* analysis. Second, at step two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

The ALJ then referenced Plaintiff's mental status reports six times throughout her decision and used them, at least in part, to discount Plaintiff's subjective complaints related to depression.[6] (Tr. 1226-28.) Thus, in assessing Plaintiff depression, the ALJ appears to have

---

[6] More specifically, the ALJ emphasized Plaintiff's mental status reports as follows:

- "Treatment records show that when seen in April and September of 2017, the claimant reported irritability at times and sadness due to death in the family but at each session her mental status examinations were within normal limits."

- "[Dr. McHale] concluded this despite treating the claimant for her mental health symptoms and showing in his own medical records improvement in her symptoms as evidenced in her mental status examinations, which were essentially normal with the exception of her mood and affect secondary to her reports of psychosocial stress (Exhibit B16F)."

- "Her mental status examination at that time was within normal limits with the exception of depressed mood (Exhibit B16F/33-38)."

- "Records show she was continued on current medication for mental impairments and despite continued complaints of social stressors, the claimant's mental status examinations remained within normal limits with euthymic mood

10

required objective medical evidence supporting her depression related complaints. Consequently, the ALJ here, like the ALJ in *Shelley C.*, erroneously increased the claimant's burden of proof. *See also George K. v. Kijakazi*, No. CV GLS 21-01223, 2022 WL 3134428, at *6 (D. Md. Aug. 5, 2022) ("the ALJ erred in discrediting Plaintiff's subjective testimony regarding Plaintiff's mental limitations because they were not supported by objective medical evidence").

Beyond this, it also appears that the opinion of Plaintiff's treating physician, Dr. McHale, regarding her depression related limitations was improperly discounted by the ALJ for similar reasons. By way of example, the ALJ gave "[t]he medical opinion of Dr. McHale dated July 19, 2021 . . . little weight *especially* in light of his last two evaluations of the claimant in December 30, 2020 and May 6, 2021 wherein he concluded that her mental status examinations were within normal limits." (Tr. 1228 (emphasis added).) Given that the Fourth Circuit in *Shelley C.* concluded that depression cannot be expected to provide objective medical evidence, *Shelley C.*, 61 F.4th at 361-62, the ALJ's decision to reduce the weight afforded to Dr. McHale's July 19, 2021, opinion for lack of objective medical evidence in Plaintiff's mental

---

(Exhibit B16F/2-8)."

- "[T]reating psychiatrist Dr. Robert McHale concluded that her mental status examinations were within normal limits on December 30, 2020 and May 6, 2021(Exhibits B34F/22; B40F/12)."

- "The medical opinion of Dr. McHale dated July 19, 2021 has been given little weight especially in light of his last two evaluations of the claimant in December 30, 2020 and May 6, 2021 wherein he concluded that her mental status examinations were within normal limits (Exhibits B34F/22; B40F/12)."

(Tr. 1226-28.)

11

status reports was in error. *See Sandra P. v. Comm. of Soc.*, No. 2:21CV127, 2022 WL 815463, at *1 (E.D. Va. Mar. 1, 2022) ("[T]he ALJ appears to have discounted medical opinions and Plaintiff's complaints of pain based primarily on her history of conservative treatment and lack of objective findings. Given her severe impairment of fibromyalgia, these references are insufficient after *Arakas* and remand for additional scrutiny of the medical evidence is required . . . .").

The error is not harmless. For example, Dr. McHale's July 19, 2021, opinion sets forth numerous restrictions that if given significant or controlling weight would likely render Plaintiff disabled. (Tr. 5288-92 (setting forth work preclusive deficits in maintaining attention for two-hour segments, maintaining regular and punctual attendance, sustaining an ordinary work routine without special supervision, *etc.*) Additionally, there are many statements on the record in which Plaintiff addresses the intensity, persistence, and limiting effects of her symptoms of depression which, if credited, would likely be work preclusive. (Tr. 1000, 1262-63, 1271-72, 60-62, 2906, 3210, 3587.) As explained, per *Shelley C.*, this evidence cannot be discounted based on objective medical evidence (or lack thereof).

The Commissioner, in turn, correctly observes that the ALJ in this case pointed to other evidence in the record for reducing the weight attributed to Dr. McHale's opinion and in support of the subjective complaints analysis. (Docket Entry 19 at 3-5 & n.3.) However, as the Fourth Circuit explained in *Arakas*—which dealt with fibromyalgia, another illness that does not produce objective medical evidence—"while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not

12

Case 1:22-cv-00527-LCB-JLW   Document 21   Filed 07/21/23   Page 12 of 14

definitive, reason for discounting Arakas's complaints." *Arakas*, 983 F.3d at 97. The same can be said here, given the ALJ's repeated emphasis on Plaintiff's mental status reports. For all these reasons, the Court concludes that a remand for further administrative proceedings and the proper application of *Shelley C.* is appropriate.[7]

All of this is sufficient to warrant remand for further consideration. None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that question. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. Finally, the undersigned declines consideration of any additional issues raised by Plaintiff at this time. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand,

---

[7] *See, e.g.*, *Lester v. Kijakazi*, No. 1:21CV00036, 2023 WL 2591477, at *3 (W.D. Va. Mar. 21, 2023) (remanding due in part to *Shelley C.* error and explaining that "to require that the medical record support subjective evidence regarding Lester's symptoms before crediting such evidence impermissibly increases his burden of proof since a claimant is entitled to rely entirely on subjective evidence to demonstrate that her pain was sufficiently persistent and severe to support a disability finding") (citation omitted); *Michael v. Kijakazi*, No. 7:22-CV-77-FL, 2023 WL 4280809, at *5 (E.D.N.C. June 12, 2023) ("Here, ALJ Adams found fibromyalgia to be a severe impairment at step two and acknowledged during the RFC assessment that Plaintiff has alleged disability based, in part, on her fibromyalgia. But the undersigned cannot determine how, if at all, ALJ Adams evaluated Plaintiff's allegations regarding the functional impact of her fibromyalgia. . . . Accordingly, the Commissioner should address this on remand.") (internal citations omitted); *Kelly M. v. Kijakazi*, No. TJS-21-2361, 2022 WL 2160018, at *3 (D. Md. June 15, 2022) ("The Commissioner argues that any error is harmless and that the Court should not remand the case for further proceedings. The Court is not persuaded. The dictates of *Arakas* are clear: an ALJ may not consider objective evidence to discount a claimant's subjective complaints about fibromyalgia. The ALJ did what *Arakas* prohibited in this case. Remand is required so that the ALJ can prepare a decision that complies with governing Fourth Circuit law."); *Leniya S. v. Saul*, No. DLB-19-2990, 2021 WL 1224067, at *2-3 (D. Md. Mar. 31, 2021) (remanding case because ALJ considered objective evidence to discount the claimant's subjective complaints related to fibromyalgia).

13

the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).

**IT IS THEREFORE RECOMMENDED** that the stay in this matter be **LIFTED**, that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Order. To this extent, Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) should be **DENIED** and Plaintiff's Motion for Judgment (Docket Entry 11) should be **GRANTED**. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be **DENIED**.

/s/ Joe L. Webster
United States Magistrate Judge

July 21, 2023
Durham, North Carolina